Frank Composto, J.
In this shareholder’s derivative action brought in the right of American Telephone and Telegraph Company ("A T & T”) against its directors and against five of its “subsidiaries” (which are referred to by defendants as “operating companies” but which shall, for the sake of uniformity of designation, be referred to herein as "subsidiaries”), the defendants Robert D. Lilley and AT&T move for an order dismissing the complaint pursuant to CPLR 3211 (subd. [a], par. 1) (defense founded on documentary evidence) and CPLR 3211 (subd. [a], par. 7) (failure to state a cause of action).
The complaint alleges the following: that plaintiff is and has *840 been for more than the past six years a shareholder of A T & T; that AT&T, directly and through its subsidiaries, operates and controls a telephone communications network in the United States; that AT&T has a license contract with each of the subsidiaries under which AT&T agrees (1) to maintain arrangements whereby telephone and related equipment may be manufactured under patents owned or controlled by A T & T and may be purchased by the subsidiaries; (2) to prosecute telephonic research and to make available to the subsidiaries the benefits of such research; and (3) to furnish advice and assistance to the subsidiaries. The complaint goes on to allege that AT&T collects from each subsidiary, for the afore-mentioned services, 1% of the gross revenues of each subsidiary, despite the contracts, in existence for at least the past six years, "requiring” each subsidiary to pay AT&T 2Vi% of the subsidiaries’ gross revenues (erroneously stated in the complaint as "three percent” of the gross revenues). The complaint further alleges that the defendant Lilley, the president of A T & T and a director thereof, is also a director of two of these subsidiaries "and is therefore subject to a conflict of interest as between [AT&T] and the said subsidiaries”; that in any event, "since [AT&T] is the controlling stockholder of each of the said subsidiaries, the individual defendants as directors of [A T & T] owe fiduciary obligations and duties to each subsidiary as well as to [A T & T] and are therefore subject to a conflict of interest as between [AT&T] and the said subsidiaries”; that the services rendered by A T & T to the subsidiaries pursuant to the license contracts cost AT&T "as much or more than” the 1% paid by the subsidiaries, so that said services are rendered to the subsidiaries "virtually without profit * * * or at a loss” to A T & T; that by failing to collect for A T & T the payments at the rate provided in the contracts, the individual defendants "in effect, have chosen to enrich [A T & T’s] subsidiaries * * * at the expense of [A T & T],” and have thereby violated their fiduciary duties and obligations to A T & T. The prayer for relief seeks an accounting for damages covering the six-year period immediately prior to the commencement of the action.
It should be pointed out initially that it is not clear from the allegations of the complaint whether the plaintiff is proceeding on the theory that the individual defendants breached their fiduciary trust in failing to act in good faith, or that they were negligent or inattentive to the affairs of A T & T in *841 permitting payments at a lower rate than that provided for in the license contracts. Thus, the complaint is deficient for failure to make clear the theory on which plaintiff is proceeding (cf. Untermeyer v Myriad Investors Corp., 43 AD2d 525).
In any event, however the complaint is viewed, it must be deemed to fail to state a cause of action. It is well to note, in considering the sufficiency of the complaint insofar as it may purport to proceed on the theory that the individual defendants are guilty of fraud or breach of trust or a lack of good faith, that no actionable wrong can be imputed from the sole fact that during the course of dealings between AT&T and the subsidiaries, the defendant Lilley was also a director of two of the subsidiaries here involved. Dealings between corporations having one or more directors in common do not necessarily involve a diversion of loyalty and breach of trust (Everett v Phillips, 288 NY 227; see 12 NY Jur, Corporations, § 763). This view has found implicit recognition in section 713 of the Business Corporation Law which provides, in part, that contracts or transactions with interested directors or between corporations having directors in common are not, solely by reason thereof, voidable. Intercorporate transactions effected through a common officer or director may be sustained if such transaction is fair. In short, the mere fact that AT&T and the subsidiaries mentioned in the complaint in the case at bar share a director in common is not of itself actionable. While it is true that the dealings of a director serving on two or more corporations involved in the transaction may invite judicial scrutiny, it is still necessary, in order to hold such a director liable, to show that he was guilty of breach of duty on his part.
The standards which govern the duties of directors and officers of corporations are embodied in section 717 of the Business Corporation Law, which requires that "directors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions.”
This statutory provision, to act in good faith and with due care, is carried forward from the common law of this State. The duty of care is measured by the circumstances (12 NY Jur, Corporations, § 720). It goes without saying that a director of a corporation will be held liable for conduct or acts which involve fraud, bad faith, or intent to promote self- *842 interest or the interests of others at the expense of the corporation. This clearly would constitute a breach of fiduciary duty, whether at common law or under section 717 of the Business Corporation Law. If this is the basis on which the complaint in this case seeks to hold the individual defendants, the complaint is insufficient in failing to adequately plead the circumstances constituting the misconduct, as required by CPLR 3016 (subd. [b]), which provides, in part, that where a cause of action is based on fraud or breach of trust, the circumstances constituting the wrong shall be stated in detail (cf. Block v Landegger, 44 AD2d 671).
Insofar as the complaint purports to charge the individual defendants with negligence or lack of due care in permitting payment to be made to A T & T at the rate of only 1%, it does not sufficiently allege facts from which an inference of negligence or lack of due care can legitimately be drawn. Whether the 1% payments, which, it is alleged, were insufficient or barely sufficient to meet the cost to A T & T of the services furnished by it, resulted from a lack of diligence in protecting the interests of the corporation, thereby constituting actionable negligence, cannot be determined from the allegations of the plaintiffs pleading. To illustrate, it may be assumed from the papers submitted on this motion that the complaint does not purport to charge the individual defendants with having initiated the alleged policy of accepting the reduced payments of 1% from the subsidiaries; and if the plaintiff is seeking to charge the said defendants with negligence in continuing the policy of collecting the reduced payments, she should have set forth in her complaint the particular facts showing that the individual defendants were guilty of negligence in not departing from that policy. So far as appears from the complaint, the acceptance of 1% of the gross revenues of the subsidiaries as payment for services rendered, instead of the percentage amount provided for in the respective license contracts, may have represented the continuance of a policy based on countervailing or compensatory considerations which, under the business judgment rule, would shield the individual defendants from liability. The business judgment rule has been enunciated in the following language in Pollitz v Wabash R.R. Co. (207 NY 113, 124): "[The acts of directors of a corporation] within the powers of the corporation, in the lawful and legitimate furtherance of its purposes, in good faith and the exercise of an honest judgment, are valid and conclude the *843 corporation and the stockholders. Questions of policy of management, expediency of contracts or action, adequacy of consideration, lawful appropriation of corporate funds to advance corporate interests, are left solely to their honest and unselfish decision, for their powers therein are without limitation and free from restraint, and the exercise of them for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient.” (See Blaustein v Pan Amer. Petroleum & Transp. Co., 293 NY 281, 303-304.)
While a pleading for many purposes is deemed to allege all the facts which may reasonably be inferred from the allegations, a fact essential to a cause of action is not deemed alleged when it is only to be inferred from other facts specifically alleged which are not inconsistent with the opposite fact (Jacobs v Monaton Realty Inv. Corp., 212 NY 48; 4 Carmody-Wait 2d NY Practice, § 27:8). Thus, in the case at bar, no bad faith, breach of trust, or negligence will be inferred from the mere allegation that 1% of the gross revenues of each subsidiary was collected in payment for services rendered instead of the 2Vz% provided for in the license contracts, even though barely sufficient to meet the cost of the services rendered, since such alleged fact, without more, may be consistent with the legitimate and good faith exercise of the business judgment of the directors of A T & T. "Directors are presumed to act honestly and in accordance with their best business judgment, and sometimes properly may waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right” (Clifford v Metropolitan Life Ins. Co., 264 App Div 168, 170).
In a case whose alleged facts bear some analogy to the facts alleged in the case at bar (Gilbert v Case, 17 Misc 2d 1061), the court, in dismissing a plaintiff shareholder’s derivative action for failure to state a cause of action, held that the allegation that the corporation there involved sold an undefaulted $6,210,000 mortgage to the mortgagor for $2,500,000 cash and $500,000 second mortgage did not of itself warrant the conclusion that there was on the part of the directors of the corporation any fraud or conduct so manifestly oppressive as to be the equivalent of fraud, nor did such allegation lead to a clear inference that the directors had acted with intent to subserve some outside purpose and in a manner inconsistent with the corporate interest. The court said (p 1062): "The *844 mere difference in the alleged value of the mortgage and the sale price, in and of itself and without further facts, fails to establish the essential elements needed to sustain such cause of action.”
In Eighteen Fulton St. Corp. v Appel (272 App Div 602), a complaint alleging that the individual defendants, who were officers, directors, and stockholders of both the plaintiff and the defendant corporations, caused the plaintiff to lease certain premises to the corporate defendant for $6,600 annually, when the same premises had been rented for $12,000 annually 10 years before, and that the fair rental value of the premises greatly exceeded the rent charged the defendant, but failing to allege what portion of the defendant corporation’s stock was held by the individual defendants, or that the corporate defendant’s occupancy of the premises was for the benefit of the individual defendants, was dismissed as containing insufficient factual allegations to indicate that the defendants were acting for their personal gain or to show that their conduct constituted fraud or was so offensive to the rights of the plaintiff corporation as to be the equivalent of fraud.
While pleadings are to be liberally construed, it is still necessary that the pleading include the essential elements of a cause of action, and if there is a failure to do so, the pleading is subject to dismissal (CPLR 3013; Shapolsky v Shapolsky, 22 AD2d 91; Lewis v Village of Deposit, 40 AD2d 730, affd 33 NY2d 532).
The complaint in the case at bar fails to set forth all of the essential elements of a cause of action and, accordingly, the motion to dismiss for legal insufficiency is granted, without prejudice to an application by plaintiff, if she be so advised, for leave to serve an amended complaint.
In view of the court’s determination that the complaint is insufficient in law, it becomes inappropriate to pass on so much of defendant’s motion as seeks a dismissal on the basis of a defense founded on documentary evidence.